No. 13,596.

State of Colorado *v.* Tolbert et al.
(56 P. [2d] 45)

Decided March 23, 1936.

434

Mr. Paul P. Prosser, Attorney General, Mr. Oliver Dean, Assistant, for plaintiff in error.

Mr. Alfred A. Arraj, Mr. Charles L. Doughty, Mr. D. G. Reynolds, for defendants in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

The district court of Baca county denied an application of the state of Colorado for an injunction to restrain the defendants from using certain motor fuel imported by them from Kansas. A demurrer was interposed to the amended complaint of the state. The court sustained the demurrer. The state thereupon elected to stand on its amended complaint. Judgment of dismissal was

entered and the state has brought the case before this court for review.

1. The case involves chapter 140 in the Session Laws of 1933 (the so-called motor fuel tax law). This, in so far as here applicable, provides in part as follows (italics here and elsewhere being ours):

"Section 2. Tax Imposed: * * * (b) Every person who shall use in this State for propelling a motor vehicle on the public streets or highways, *or import into this State for use or sale in this State* any motor fuel on which a licensed distributor has not paid or is not liable for the tax hereinbefore imposed, shall be liable for and *shall pay to the State Treasurer an excise tax* of four cents (4c) per gallon or fraction thereof upon all such motor fuel *so used or imported* for use or sale in this State, *on or before the twenty-fifth (25th) day of the calendar month following the month in which such motor fuel was used or imported and shall render at the time of the payment of such tax an itemized statement* under oath to the State Treasurer, on forms provided by said Treasurer, of all such motor fuel *so used or imported during the calendar month in question.*" (Here follow two provisos not in any way involved here.) * * *

"Section 17. *No provision of this Chapter shall apply or be construed to apply to Interstate Commerce.*"

Section 19 is a severability clause.

2. Such being the law as enacted by the General Assembly, the state of Colorado applied by its Attorney General to the district court for an injunction against the defendants, aptly and sufficiently alleging in the amended complaint the following facts:

Tolbert (for simplicity's sake we employ his name alone as if he were the sole defendant, though the allegations apply equally to each of the twelve defendants). operated *in June, July and August of 1933* a wagon or truck on the highways of the state of Colorado and by means thereof imported into Baca county from the state

of Kansas, *for use,* and *did use, in Colorado* loads or shipments of motor fuel, to wit, gasoline, in quantities aggregating many thousands of gallons; he is not and has not been a licensed distributor of motor fuel in Colorado; no licensed distributor of motor fuel has paid or is liable for the excise tax on any of the gasoline so imported and used by him; he has failed and refused to send to the state treasurer of Colorado any statement of motor fuel *so imported;* he has failed and refused to pay to the state treasurer the excise tax of four cents per gallon on any of said motor fuel *so imported and used.*

It is manifest that the above stated facts charge continuous and apparently flagrant violations of the statute. By section 8 of the Act these are made misdemeanors punishable by fine or imprisonment or both.

Additional facts, also aptly and sufficiently pleaded, disclose an astounding situation. They are these:

The state agents, charged with enforcement of the motor fuel tax law, have, before, when and since said gasoline was imported, warned Tolbert that the aforesaid importation and use of gasoline in the manner alleged was a violation of the law, but he disregarded the warning, defied the agents, and repeatedly threatened them with bodily violence; he has declared his intention to continue such importation and use of gasoline as he may desire or his needs may require; there is between Tolbert and many other persons in said Baca county a concert of action and unity of design to defy the state in the enforcement of the above mentioned law; Tolbert and many of the persons so acting in concert with him are financially irresponsible and execution-proof; unless Tolbert is enjoined and restrained by a writ of injunction from using in Colorado motor fuel so imported into Colorado from any other state or country by any person, firm or corporation, except a distributor of motor fuel licensed in Colorado, he will continue to import and use motor fuel as described, will continue to refuse to report

to the state treasurer such importation and use of such motor fuel, will continue to refuse to pay the excise tax thereon, and will by his example lead other persons in said Baca county and other counties of Colorado to adopt the same method of obtaining motor fuel, and the state will be deprived of a large amount of excise taxes, its road building program will be hampered and curtailed, and the adequate enforcement of the motor fuel tax law will become impossible; the state has no plain, speedy or adequate remedy at law against Tolbert for the injuries complained of; the granting of injunctive relief will prevent and make unnecessary a multiplicity of suits; the continuance by Tolbert of the acts complained of will result in great and irreparable injury to the plaintiff state.

All the aforesaid allegations of the state are admitted by the demurrer to be true. *People v. Wood,* 90 Colo. 506, 509, 10 P. (2d) 331, 333. Not only so. The state is entitled to have drawn from the express allegations every fair and reasonable deduction in its favor, and is not called upon to anticipate or negative matters that might constitute defenses. *Downey v. Colorado Fuel & Iron Co.,* 48 Colo. 27, 28, 108 Pac. 972.

3. The demurrer to the amended complaint alleged the following grounds: (1) That the court has no jurisdiction of the subject of the action; (2) that there is a misjoinder and defect of parties defendant; (3) that "another cause of action" alleges certain things; (4) that the complaint does not state facts sufficient to constitute a cause of action against the defendants or any of them; (5) that the motor fuel tax law violates the commerce clause in the United States Constitution, article 1, section VIII, paragraph 3; (6) that it violates section 21 of article V in the Colorado Constitution, by an alleged conflict between the title and the body of the act in question; (7) that it violates section 7 of article X in

the Colorado Constitution, by an alleged attempt of the General Assembly to impose a tax for county purposes.

Of the above seven grounds, the first is obviously intended to raise the question whether an injunction can issue to restrain the perpetration of a crime. This will be dealt with under subdivision 4 below. The second and third grounds have been abandoned. It will be seen that three of the remaining four grounds charge the violation of various constitutional provisions, while the fourth constitutes a general demurrer.

4. The district court, in sustaining the demurrer so interposed, made its ruling as follows: "It is ordered that said demurrer be sustained upon the sole grounds that this Court has no jurisdiction to enter the judgment or particular judgment prayed for in this action for the reason that the acts complained of constitute a criminal offense under the law of the State. As to all other grounds the demurrer is overruled."

The ruling so made was erroneous. The general rule undoubtedly is that injunction does not lie to restrain the commission of a crime, but there are well-defined exceptions. 32 C. J. 279, §442; 14 R. C. L. 379, §80. Incidentally, it is to be noted that the offenses sought to be restrained in the case at bar are mere misdemeanors. S. L. 1933, page 733, section 8.

According to the facts admitted by the demurrer, the collection of the excise tax which the General Assembly has deemed necessary and proper is being hindered, and the governmental agencies engaged in the collection are rendered powerless. Unless the defendants are restrained, the state will suffer irreparable material injury, particularly in connection with its road-building program. Moreover, a multiplicity of suits would be prevented by issuance of the injunction. This situation clearly takes the case from under the general rule and establishes it as a proper exception. Compare *Heber v. Portland Co.*, 64 Colo. 352, 172 Pac. 12.

For the error in sustaining the demurrer on the ground that the court had no jurisdiction of the subject of the action because violations of the motor fuel tax law are criminal offenses and cannot be enjoined, the judgment must be reversed unless the demurrer is good on some other ground covered by the defendants' assignment of cross-errors.

The cross-errors assigned relate to the grounds we shall now discuss.

5. If there were merit in the contention represented by the first ground, namely, that the district court had no jurisdiction of the subject of the action, it would be in the argument of counsel, under this head, that the suit involves an attempt unlawfully to interfere with interstate commerce. We shall deal with this argument later on, in subdivision 8.

6. We cannot assent to counsel's statement that section 21 of article V in the Colorado Constitution is violated by the fact that neither transportation of gasoline nor a distributor's license is mentioned in the title of the act in question. The title is ''An act relating to an excise tax on motor fuel * * *.'' This is broad enough to include all that is involved in the injunction suit. Compare *Metzger v. People,* 98 Colo. 133, 53 P. (2d) 1189. The contention is overruled.

7. Counsel also charge that the Act contravenes section 7 in article X of the Colorado Constitution, alleging that it is an attempt to impose a tax for county purposes, providing for highway construction and maintenance. The excise tax is a tax which in its discretion the General Assembly, as the coordinate law-making branch of the government, has ample power to impose. *Altitude Oil Co. v. People,* 70 Colo. 452, 202 Pac. 180. The question as to how the revenue derived from such a tax shall be expended is not involved in this case. That phase of the law cannot be assailed by Tolbert and the other defendants herein.

■ 8. Reverting now to the subject (briefly mentioned in the foregoing subdivision 5) of alleged interference with interstate commerce, we hold that no such interference is shown by the facts presented in the record.

The legal principles governing the right of the states to levy excise taxes under laws similar to our chapter 140, S. L. 1933, have been unequivocally laid down by the Supreme Court of the United States.

In the case of *Gregg Dyeing Co. v. Query,* 286 U. S. 472, 478, 76 L. Ed. 1232, 1237, 52 Sup. Ct. 631, 634, 84 A. L. R. 831, 836, the United States Supreme Court dealt with a South Carolina statute much like our own, Mr. Chief Justice Hughes, who delivered the unanimous opinion of the court, saying:

"As to interstate commerce, the questions are (1) whether the Act as applied by the state court imposes a direct burden upon that commerce, and (2) whether, although the subject of the tax would otherwise be within the power of the State, the tax is invalid because it creates an unconstitutional discrimination against transactions in interstate commerce." (Question [2], as to unconstitutional discrimination, is not here involved, it being conceded that the Colorado statute purports to tax imported motor fuel exactly the same as any other.)

"As to the first question," continues the learned Chief Justice, "we are not concerned with what the tax is called, but with what the statute does. It imposes an exaction with respect to gasoline purchased in other states and brought into South Carolina and there placed by appellants in storage for future use within the State. By the terms of the Act, as construed by the state court and applied to these appellants, interstate commerce in relation to the subject of the tax has ended. The gasoline has come to rest within the State, having been placed in appellants' storage tanks and added to appellants' property kept for local purposes. In such circumstances

the State has the authority 'to tax the products or their storage or sale.' * * * Not only may local sales of gasoline thus brought into the State be taxed, *but its use as well.* * * * In view of these well-established principles, we find no ground for concluding that the State could not impose the tax with respect to the gasoline of appellants which was kept within the State *for use in their local enterprises.* * * * Interstate transportation having ended,. the taxing power of the State in respect of the commodity may, so far as the commerce clause of the Federal Constitution is concerned, 'be exerted in any way which the State's constitution and laws permit.' This, of course, is on the assumption that the tax does not discriminate against the commodity because of its origin in another State.'' (As we have already observed, there is no such discrimination under the Colorado statute.)

Under our statute the tax does not become overdue until after ''the 25th day of the calendar month following the month in which such motor fuel was used or imported'' (Chapter 140, S. L. '33, section 2 (b), ante). Colorado is thus more lenient than at least one other state, whose tax on imported motor fuel accrues *24 hours after the shipment has come to rest,* which tax was also found valid by the United States Supreme Court. *Edelman v. Boeing Air Transport,* 289 U. S. 249, 77 L. Ed. 1155, 53 Sup. Ct. 591.

In *Wiloil Corp. v. Pennsylvania,* 294 U. S. 169, 174, 175, 79 L. Ed. 838, 840, 841, 55 Sup. Ct. 358, 360, the same principles were reaffirmed by Mr. Justice Butler, who, speaking on behalf of the entire court, said:

''The commerce clause does not prevent taxation of goods by the state in which they are found merely because brought from another state, for that would unduly trammel state power of taxation and produce gross inequality and injustice. * * *

''Our decisions show that, if goods carried from one state have reached destination in another where they are

held in original packages for sale, the latter has power without discrimination to tax them as it does other property within its jurisdiction. * * * And as that rule applies whether the burden falls directly or indirectly * * * it is not material whether the tax is upon the sale and delivery or upon the property. * * * As interstate transportation was not required or contemplated, it may be deemed as merely incidental. * * * The act lays no burden on interstate commerce as such and, if any can be said to result from the imposition, it is indirect and precisely as that which would have resulted if deliveries had been made exclusively by intrastate transportation from Pennsylvania sources. We need not consider whether deliveries to purchasers ended the interstate commerce involved including all incidents that in other connections might constitute an essential part of that which is covered by the commerce clause.''

In *Nashville C. & St. L. R. Co. v. Wallace,* 288 U. S. 249, 77 L. Ed. 730, 53 Sup. Ct. 345, the court had under review a law imposing an excise tax similar to our own upon gasoline that was imported from another state *for subsequent use in interstate commerce.* Nevertheless, it was held, Mr. Justice Stone delivering the opinion for the undivided court, that the tax accrued when the interstate shipment came to rest and that there was thenceforth no immunity from the tax.

*Edelman v. Boeing Air Transport, supra,* was a case where an air transportation company was held liable for a similar tax of the state of Wyoming, *even though the motor fuel was admittedly to be used in interstate flights.*

In this connection the case of *People v. Texas Co.,* 85 Colo. 289, 275 Pac. 896, may be read with profit. See, also, annotation in 84 A. L. R. 839, especially subdivision 2 beginning at page 842.

██ It is, of course, elementary that the United States Supreme Court adopts the interpretation of the state courts as to the meaning, scope and limitations of the

state laws. *Burns Mtg. Co. v. Fried,* 292 U. S. 487, 494, 78 L. Ed. 1380, 1385, 54 Sup. Ct. 813, 814. See, also, *Edelman v. Boeing Air Transport, supra,* at page 253.

The amended complaint here does not even raise a suspicion that the state is violating, or intends to violate, any constitutional rights. The law itself provides that it shall not apply or be construed to apply to interstate commerce. The state, which in the absence of contrary allegations is presumed to be obedient to its own law, asks that the defendants be enjoined from *using* the imported motor fuel unless they comply with the law by filing the required statements and pay the tax. This, in the trying circumstances recited in the amended complaint, should be done, *unless* issues of fact in confession and avoidance are tendered by an answer of the defendants.

In the light of the foregoing discussion, we find that the lower court committed error by holding the amended complaint insufficient for the alleged reason that the court cannot enjoin the commission of a crime. The alleged ground of the state's violating the interstate commerce clause also lacks merit. So also do the other grounds of the demurrer.

The judgment must be reversed with directions to the lower court to overrule the demurrer and to give the defendants time to file an answer if they so desire, further proceedings to be in harmony with this opinion.

Judgment reversed with directions.

MR. CHIEF JUSTICE CAMPBELL dissents.

MR. CHIEF JUSTICE CAMPBELL, dissenting.

I am unable to agree with the opinion of Mr. Justice Bouck in this case for the reasons stated in this dissenting opinion.

The state of Colorado, by its attorney general, brought this action against the defendants Tolbert and others,

who, plaintiff says, unlawfully imported from the state of Kansas into the state of Colorado motor fuel without paying a tax thereon, which a Colorado statute has imposed in such cases, and who threaten to continue such importation. Defendants are not licensed distributors in Colorado of fuel oils. The attorney general says such payment is required by section 2 of our 1933 Session Laws, chapter 140, page 718, which imposes an excise tax of four cents per gallon on all motor fuel sold or used in this state. Defendants demurred to the complaint on the grounds that the district court has no jurisdiction of the subject-matter of the action; that the complaint does not state a cause of action, and unlawfully seeks to regulate interstate commerce. The trial court sustained this demurrer for the reasons stated by it that the acts therein complained of constitute a criminal offense under the laws of Colorado, hence not taxable at all; but, if taxable, are in violation of section 7 of article X of the Constitution of Colorado in that they amount to an attempt by the General Assembly itself to impose a tax for highway purposes; that is, for highway construction and maintenance, and the levy in such cases is for the county and not for the state to exact. All other grounds of the demurrer were overruled. The plaintiff state, objecting to this judgment, has sued out this writ of error to review the same. The trial court apparently would have upheld the complaint had it not believed that the acts pleaded therein constitute a criminal offense. And this is manifest because the trial judge said that all other grounds of the demurrer to the complaint were overruled. That circumstance, in my view, however, is not important for I am of the opinion that the judgment should be affirmed for the following reasons.

It is not seriously, or at all, contended by the plaintiff state that the bringing of motor fuel from the state of Kansas into the state of Colorado does not constitute interstate commerce. It would seem too plain for argu-

ment that it has this effect. The complaint clearly and distinctly charges that the defendants are engaged in the business of bringing from one state—Kansas—into another state—Colorado—motor fuel without paying, or offering to pay, the tax which section 2, chapter 140, of Colorado Session Laws of 1933 in such circumstances imposes. Such acts, constituting, as they do, interstate commerce, are within the protection of section 17, page 739, chapter 140, S. L. 1933, which reads: "No provision of this chapter [140] shall apply or be construed to apply to interstate commerce."

The trial court's judgment in my opinion should be affirmed.