WILOIL CORPORATION *v.* PENNSYLVANIA.

No. 439. Argued January 14, 1935.—Decided February 4, 1935.

See 37 Dauphin Co. Rep. 63.

*Mr. J. Smith Christy* for appellant.

*Mr. John Y. Scott,* Deputy Attorney General of Pennsylvania, with whom *Mr. Wm. A. Schnader,* Attorney General, was on the brief, for appellee.

172

Mr. Justice Butler delivered the opinion of the Court.

This case, coming before the court of common pleas of Dauphin county upon the appeal of the company from determinations of state taxing authorities, is an action by the Commonwealth against appellant to recover a tax under § 4 of the Liquid Fuels Act of 1931. P. L. 149. By that act a tax of three cents a gallon is imposed " upon all liquid fuels used or sold and delivered by distributors within this Commonwealth," and distributors are made liable for the payment of the tax. They may add the amount of the tax to the price and are required on all delivery slips or bills to " state the rate of the tax separately from the price of the liquid fuels." Appellant maintained below, and it insists here, that, construed to impose the tax in question, the statute is repugnant to the commerce clause of the Federal Constitution, Art. I, § 8, cl. 3. The trial court held otherwise and gave judgment for the amount claimed. The supreme court affirmed. 316 Pa. 33; 173 Atl. 404.

Appellant, a Pennsylvania corporation having its principal place of business in Pittsburgh, sells liquid fuels at wholesale and is a distributor as defined by the act. The

tax in controversy was laid at three cents per gallon upon the contents of 13 tank cars sold and delivered by it. All were ordered through its agent in Philadelphia for delivery to purchasers at that city or at Essington, Pennsylvania. The orders specified a price per gallon " f. o. b. Wilmington, Del., plus 3¢ tax," and were subject to, and received, appellant's approval at its office in Pittsburgh. The purchasers were not licensed or taxable as distributors. All fuels delivered under these contracts were obtained from Crane Hook Company of Wilmington, Delaware, and on the order of appellant were shipped by rail from there to the purchasers in Philadelphia or Essington. Each car moved on a bill of lading in which the appellant was consignor and the purchaser was consignee; the place of shipment indicated was Wilmington and the place of destination was consignee's private siding in Philadelphia or Essington. Appellant prepared and sent to the buyer an invoice covering each shipment, showing the price as stated in the order.

The inference that might be drawn from the f. o. b. order, the billing and straight bill of lading that the parties intended delivery to purchaser at place of shipment, is negatived by other circumstances. The contracts were executory and related to unascertained goods. Section 19, Rule 4 (2), Act of May 19, 1915, P. L. 543, 548. It does not appear that when they were made appellant had any fuels of the kinds covered, or that those to be delivered were then in existence. There was no selection of goods by purchasers. Appellant was not required by the contracts to obtain the fuels at Wilmington but was free to effect performance by shipping from any place within or without Pennsylvania. It is the practice in appellant's business to sell f. o. b. at a specified place in order to fix the price, and such billing may be merely price-fixing and not an indication of the source or place

of shipment. The reference to the tax in the orders and invoices would have been unnecessary if delivery were not to be made in Pennsylvania; for if made at Wilmington, the transactions would not have been within the provision of the taxing act. Upon these considerations, the state supreme court held that the liquid fuels in question were by appellant " sold and delivered " to purchasers in Pennsylvania. And see *Dannemiller* v. *Kirkpatrick*, 201 Pa. 218, 224; 50 Atl. 928. *Frank Pure Food Co.* v. *Dodson*, 281 Pa. 125; 126 Atl. 243. *Charles E. Hires Co.* v. *Stromeyer*, 65 Pa. Super. Ct. 241, 243. The ruling is not challenged by appellant and is binding upon it here.

These contracts did not require or necessarily involve transportation across the state boundary. The precise question is whether the mere fact that appellant caused the fuels to be shipped from Delaware for delivery in tank cars—deemed original packages (*Askren* v. *Continental Oil Co.*, 252 U. S. 444, 449)—on purchasers' sidings, as agreed, makes imposition of the tax repugnant to the commerce clause. There is nothing to indicate legislative purpose to discriminate against liquid fuels brought into Pennsylvania to be delivered in fulfillment of sales contracts or there to be used or sold. The commerce clause does not prevent taxation of goods by the State in which they are found merely because brought from another State, for that would unduly trammel state power of taxation and produce gross inequality and injustice. *Woodruff* v. *Parham*, 8 Wall. 123, 137. The limitation appellant puts on § 4 would operate to the extent of three cents a gallon in favor of liquid fuels delivered, as in this case, from a place in another State, against those delivered in Pennsylvania from sources in that Commonwealth over routes wholly therein. And, if that section may not be constitutionally construed to tax the shipments here in question, then equally free from the burden must be

liquid fuel transported by rail or truck from Pennsylvania sources to places of delivery in that State over any route not wholly therein.

Our decisions show that, if goods carried from one State have reached destination in another where they are held in original packages for sale, the latter has power without discrimination to tax them as it does other property within its jurisdiction. *Woodruff* v *Parham, supra; Brown* v. *Houston,* 114 U. S. 622, 632; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 519–522; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506. And as that rule applies whether the burden falls directly or indirectly (*Banker Bros. Co.* v. *Pennsylvania,* 222 U. S. 210) it is not material whether the tax is upon the sale and delivery or upon the property. Admittedly the sales contracts were made in Pennsylvania. Deliveries to purchasers at destination were made in accordance with the terms of the sales. As interstate transportation was not required or contemplated, it may be deemed as merely incidental. Cf. *Moore* v. *N. Y. Cotton Exchange,* 270 U. S. 593, 604. *Ware & Leland* v. *Mobile County,* 209 U. S. 405, 412–413. The act lays no burden on interstate commerce as such, and if any can be said to result from the imposition, it is indirect and precisely as that which would have resulted if deliveries had been made exclusively by intrastate transportation from Pennsylvania sources. We need not consider whether deliveries to purchasers ended the interstate commerce involved, including all incidents that in other connections might constitute an essential part of that which is covered by the commerce clause. Cf. *Federal Trade Comm'n* v. *Pacific Paper Assn.,* 273 U. S. 52, 63. Upon the principle applied here recently in *Minnesota* v *Blasius,* 290 U. S. 1, the liquid fuels were taxable in Pennsylvania.

*Affirmed.*