## CAVALIER VENDING CORP. v. UNITED STATES.

### No. 6272.

United States Court of Appeals Fourth Circuit.

Argued June 25, 1951.

Decided July 24, 1951.

———◆———

Edwin C. Kellam and W. R. Ashburn, Norfolk, Va., for appellant.

William B. Eley, Asst. U. S. Atty., Norfolk, Va. (George R. Humrickhouse, U. S. Atty., Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and TIMMERMAN, District Judge.

PARKER, Chief Judge.

This is an appeal by claimant in a libel proceeding under the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq., in which an order was entered condemning certain candy, chewing gum and metal plastic trinkets contained in vending machines. The principal question presented by the appeal is whether under the facts of the case the candy and gum are adulterated within the meaning of the act.

There is no dispute as to the facts. It is conceded that the candy and gum are not adulterated and do not of themselves fall within the condemnation of the act. The finding of adulteration is based upon the fact that after arrival in Norfolk, they were placed in vending machines along with the trinkets. The facts are succinctly and accurately set forth in the opinion of the learned judge below as follows:

"The slot machines are identical and no variant in them or their content necessitates separate consideration. The gum is in the form of a small marble, less than a half-inch in diameter, while the candy is somewhat smaller, but also spheroidal—a candy-coated peanut.

"Trinkets are made of plastic and metal, in the design of animals, clocks, hats, boots, balls, rings, and lapel-pins. They are in bright and . varied colors, like the units of gum and candy, but except for the balls, the trinkets differ from the units in shape, and some are smaller and others larger.

"The machine operates on the coin in the slot principle. Its wares are held within a hollow glass globe, with the candy, gum and trinkets plainly visible, and promis·cuously mingled. With the insertion of a coin and the turn of a crank, the purchase pours from the bowl by gravity into a receptacle open to the vendee. Each delivery of candy comprises 8 to 10 pieces, usually with one or more trinkets, while a delivery of gum consist of one ball with or without a trinket. In random samples it was found that to a quart of candy there were 840 peanuts and 21 trinkets, and a similar measure from the gum machine produced 225 pieces of gum with 65 trinkets.

"The candy and gum were shipped into Norfolk, Virginia, from Chicago, Illinois, and the trinkets from Dallas, Texas, but they were not mixed until placed in the machines in Norfolk, where they were seized."

The finding of adulteration was based upon the idea that the mingling of the trinkets with the gum and candy resulted "in an indistinguishable mass of food" which contained the trinkets within the meaning of sec. 402 (a) (1) of the Act, 21 U.S.C.A. § 342 (a) (1), which provides that food shall be deemed adulterated "if it bears or contains any poisonous or deleterious substance which may render it injurious to health".[1] The plastic or metallic trinkets would be injurious to health if swallowed or caught in the air passages of the nose or throat.

We think it perfectly clear, however, that the trinkets, which correspond to the "prizes" contained in the candy "prize boxes" of an earlier day, are not contained within the gum or candy within any possible meaning of the act. If we look to

1. 21 U.S.C.A. § 342 provides: "A food shall be deemed to be adulterated—
  "(a) (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health ; but in case the substance is not an added substance such food shall not be considered adulterated under this clause if the quantity of such substance in such food does not ordinarily render it injurious to health; or (2) if it bears or contains any added poisonous or added deleterious substance which is unsafe within the meaning of section 346; or (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health; or (5) if it is, in whole or in part, the product of a diseased animal or of an animal which has died otherwise than by slaughter; or (6) if its container is composed, in whole or in part, of any poisonous or deleterious substance which may render the contents injurious to health."

its language, the deleterious subject must be contained within the food product offered for sale, and the trinkets are not contained in the pieces of gum or candy but are merely sold along with them. Neither the gum nor the candy contains the trinkets but is contained along with the trinkets in the bowl of the vending machine. The purpose of the statute is to prevent adulteration, i. e., the "adding to articles of food consumption poisonous and deleterious substances which might render such articles injurious to the health of consumers". United States v. Lexington Mill & Elevator Co., 232 U.S. 399, 409, 34 S.Ct. 337, 340, 58 L.Ed. 658. Surely, the giving of trinkets or prizes along with the sale of candy or gum does not add anything to the "articles of food consumption" nor do they affect such articles in any way. Cf. Bourcheix v. Willow Brook Dairy, Inc., 268 N.Y. 1, 196 N.E. 617, 98 A.L.R. 1492. We cannot imagine that anyone would contend that the statute would be violated if a single trinket were included as a "prize" in a package of candy or gum; and we see no difference between this and the sale by the slot machine method here employed, where only occasionally is one of the trinkets discharged, and the possibility that this may occur is one of the chief inducements to the purchase. If there is anything objectionable in what is done, it arises not out of any adulteration of the candy or gum but out of the method of sale, which is a local matter. No case has been cited holding that the statute has any application to a case of this sort, and we know of none.

There is a grave doubt whether, even if the vending of the trinkets along with the candy and gum could be held to be adulteration, the act would have any application, since their mingling in the vending machines was a local matter which occurred after their interstate journey had ended and they had come to rest at Norfolk. There was no transmission of the "adulterated" product in interstate commerce, nor was there an offering for sale of a product which was adulterated when a subject of such commerce. See United States v. Phelps Dodge Mercantile Co., 9 Cir., 157 F.2d 453, certiorari denied 330 U.S. 818, 67 S.Ct. 675, 91 L.Ed. 1270. We need not pass upon this question, however, as we think it clear that the candy and gum were not adulterated within the meaning of the act merely because the trinkets were placed with them in the vending machines.

For the reasons stated the order appealed from will be reversed and the cause will be remanded with direction to enter judgment for the claimant.

Reversed.