Pfeiffer v. State.

4847 295 S. W. 2d 365

Opinion delivered October 22, 1956

[Rehearing denied November 26, 1956.]

*Martin, Dodds & Kidd,* for appellant.

*Tom Gentry,* Attorney General and *Roy Finch, Jr.,* Asst. Atty. General, for appellee.

Sam Robinson, Associate Justice. Appellant appeals from a conviction of violating Section 17 of Act 416 of the Acts of the General Assembly of the State of Arkansas for the year 1941, Ark. Stats. § 84-2317, which provides: "Except as herein provided, it shall be unlawful for any person to receive or have in his possession, for sale, consumption, or any other purpose, any

cigarettes upon which the tax prescribed by this act [§§ 84-2301-84-2331] has not been paid, and to the package containing which proper stamps prescribed by this act have not been affixed. The absence of the proper stamps from any container of any cigarettes shall be notice to all persons that the tax has not been paid and shall be *prima facie* evidence of the nonpayment of such tax. Provided, that the provisions of this section shall not be construed to apply to distributors and common carriers as hereinbefore defined.'' It is conceded that no Arkansas tax has been paid on the cigarettes and that appellant is not a distributor or a common carrier.

The appellant is a resident of Hills Corner, Wisconsin, and owns a 1 1/2 or 2 ton Ford Truck. During the summer of 1955, he went into the trucking business and transported a load of candy from St. Louis to Texas; on his return trip he hauled watermelons. In August 1955, he purchased in St. Louis 173 cases of cigarettes for the price of $16,429.47. He transported these cigarettes in his truck from St. Louis to a point on Highway 67 at Newport, Arkansas, where he was arrested and charged with violation of the above mentioned statute. He was fined $200, and the 173 cases of cigarettes he had in his truck were confiscated and sold to the highest bidder for $15,628.68. The proceeds of the sale of the cigarettes are being held in the registry of the court pending this appeal.

First, appellant contends that Act 416 **provides no** penalty for the violation of Section 17 thereof. However, Section 17 clearly states that it is unlawful to do the thing appellant is charged with doing, and § 41-105, Ark. Stats., provides: ''Where the performance of any act is prohibited, or the performance of any act is required, by any statute, and no penalty for the violation of such statute is imposed, either in the same section containing such prohibition, or requiring such act or duty, or in any other section or statute, the doing of such prohibited act, or the neglect of such required act or duty, shall be deemed a misdemeanor.'' And § 41-106 provides: ''Every person who shall be convicted of any misdemeanor,

the punishment of which is not defined in this or some other statute, shall be punished by imprisonment, not exceeding one [1] year, or by fine not exceeding two hundred and fifty dollars [$250] or by fine and imprisonment both.'' When all three sections are read together it is clear that the appellant, if guilty at all, is guilty of a misdemeanor and subject to the penalty as set out in § 41-106; and § 84-2327, Ark. Stats., provides for the confiscation and sale of the cigarettes upon conviction of any defendant charged with the violation of any of the provisions of Act 416 of 1941.

Next, appellant says that he was transporting cigarettes in interstate commerce; that cigarettes are legitimate articles of commerce, and that the State has no power to punish him for his act. Article 1, Section 8, Clause 3 of the Constitution of the United States provides: ''The Congress of the United States shall have power [Cl. 3] to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.'' Appellant is correct in his contention that cigarettes are legitimate articles of commerce. *Austin* v. *Tennessee*, 21 S. Ct. Reporter 132. And, the evidence is overwhelming to the effect that the cigarettes were being transported in interstate commerce; in fact, there is no substantial evidence to the contrary. The appellant bought the cigarettes in St. Louis, Missouri. He entered the State of Arkansas on U. S. Highway 67, near Corning, Arkansas, and there is no evidence that he stopped any place in Arkansas except at the revenue station at the port of entry. There he paid taxes on the gasoline that he would use in traveling through this State to the State of Texas, and he made full disclosure of the fact that his cargo consisted of cigarettes. While still traveling on Highway 67, in Newport, Arkansas, he was stopped by a State Policeman, and arrested. He had reached no destination; he was traveling on a highway that goes from Missouri on the north to Texas on the south.

The State contends that the appellant had reached his destination because he stated, on cross-examination, that he would have sold the cigarettes in Arkansas if he

could have made a 3% profit. Appellant's intention is not controlling. The test to be applied in determining the guilt or innocence of the accused is whether the cigarettes had actually reached a destination in the State of Arkansas. There was no break in the continuity of transit. In *Missouri Pacific Railroad Company* v. *Schnipper*, 51 F. 2d 749, the court said: "It is well established that the question as to whether the continuity in transit of a movement in interstate or foreign commerce is broken by an interruption at an intermediate point is not controlled by the character or method of the billing of the shipment nor by the fact that the exact ultimate destination in another state or country may or may not be known at the time of shipment . . . Nor does the mere fact that the goods may be under the control of the owner at the point of interruption with power in the owner there to withdraw or divert the goods from the interstate or foreign movement take the goods out of interstate or foreign commerce . . . ."

The States "may not tax property in transit in interstate commerce." *Minnesota* v. *Blasius*, 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131. The early case of *Brown, et al.* v. *State of Maryland*, 12 Wheat 419, 25 U. S. 419, 6 L. Ed. 678, appears to hold that no tax can be levied on an interstate shipment as long as the articles remain in the original packages; that imported articles can be held in the original packages, without being mingled with other property, and then sold without the payment of any license or tax, but later cases hold that the imported property is subject to a tax after it reaches a destination. *Sonneborn Brothers* v. *Cureton*, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095; *American Steel & Wire Company* v. *Speed*, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; *Brown* v. *Houston*, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; *Woodruff* v. *Parham*, 8 Wall. 123, 19 L. Ed. 382.

It appears that all of the cases upholding the levy of a tax by a state, where an interstate commerce question is involved, base the constitutionality of the tax on the fact that the transported property had come to rest at a destination. The State cites *Wiloil Corporation* v. *Com-*

*monwealth of Pennsylvania,* 294 U. S. 169, 55 S. Ct. 358, 79 L. Ed. 838, as sustaining the proposition that the State has the right to tax the cigarettes involved here. In that case, the court said: "Our decisions show that, if goods carried from one State have reached destination in another where they are held in original packages for sale, the latter has power without discrimination to tax them as it does other property within its jurisdiction." It will be noticed that the State's right to tax is contingent upon the property having reached a destination.

We quote from some of the cases:

"We are decidedly of the opinion that even though plaintiff Klugsberg was engaged in interstate commerce, yet when the cigarettes were finally delivered by the salesmen to the respective purchasers and the purchase money was paid to the salesmen, they ceased to be in interstate commerce and became a proper subject for taxation under the provisions of the Cigarette Law." *Sheppard* v. *Musser,* 127 Tex. 193, 92 S. W. 2d 219. In the case at bar, the cigarettes had not been delivered to any one; the owner had just brought them into the State of Arkansas from the State of Missouri; they were in transit in a truck traveling on a public highway.

"Surely when the tobacco company in Kansas sent cigarettes by C. O. D. mail to Brooks in Oklahoma and he paid the C. O. D. charges and took them to his place of business, the delivery was complete." *Ex Parte Winn.,* 61 Okla. Cr. 1, 64 Pac. 2d 927.

"Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of the property within the State and is thus subject to its taxing power." *Minnesota* v. *Blasius,* 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131.

"Furthermore, the tobacco in suit was not seized while being transported in interstate commerce. The interstate shipment had come to an end. The property

had come to rest within the State and was held at the warehouse of the carrier subject to the pleasure of the owner." *Supervisor of Public Accounts* v. *Twelve Cases of S. T.,* La. App., 172 So. 364.

The cigarettes involved in the case at bar were, without a doubt, being transported in interstate commerce at the time they were seized by an officer of the State of Arkansas. The defendant was convicted of possessing cigarettes on which the State tax had not been paid. The State has no authority to levy a tax on property while it is being transported in interstate commerce. Therefore, the cause is reversed, with directions that it be dismissed.

Justices Holt and Millwee dissent. Mr. Justice McFaddin concurs.

Ed. F. McFaddin, Associate Justice (concurring). I agree with the majority that this case should be reversed; but I submit that it should not be reversed on the issue of interstate commerce. Rather, the reversal should be because of the entire absence of any evidence that any offense was committed by the appellant.

I. *Interstate Commerce.* The majority opinion says that the cigarettes were moving in interstate commerce and, therefore could not be taxed. In the matter of tax exemption because of interstate commerce, the test is not merely whether there was interstate commerce, but the test is whether the tax is a *burden* on interstate commerce. In the case of *McLeod* v. *Memphis Natural Gas Co.,* 207 Ark. 879, 183 S. W. 2d 927, the natural gas was certainly moving in interstate commerce, and yet the tax was sustained. There are many other cases involving interstate commerce in which the tax was sustained; so I thoroughly agree with the dissenting opinion that the reversal should not be on the basis of interstate commerce. In short, I see no need to rest the opinion on the complex issue of interstate commerce, when the case could be decided on the simple issue of no evidence of law violation.

II. *Absence of Evidence of Any Offense.* My reason for reversing this case is because a careful reading of the record discloses no evidence of an offense committed by the appellant. He openly and frankly stopped his truck and disclosed its contents at the entry port and stated his destination to be Texas. Then he proceeded along U. S. Highway No. 67 toward Texas, and when he was arrested he was still on U. S. Highway No. 67 headed toward Texas. He had committed no offense: The statute here involved (§ 84-2317 Ark. Stats.) makes the offense: ". . . it shall be unlawful for any person to . . . have in his possession for sale . . . any cigarettes upon which the tax prescribed by this Act has not been paid". The appellant had the cigarettes in his possession. Did he have them in his possession for sale? Where is the evidence that he ever intended to sell the cigarettes in Arkansas without paying the tax? I submit there is none. Here is all the record contains on the vital question:

"CROSS-EXAMINATION

"Q. As a matter of fact were you taking them to Houston?

"A. Probably the first place.

"Q. Why wait and go to the state line?

"A. There was supposed to have been more money involved.

"Q. You were supposed to get more in Texas than Arkansas?

"A. I should have realized two or three percent on the load.

"Q. If you could have gotten three in Arkansas, you would have sold them, would you not?

"A. Yes, sir.

RE-DIRECT EXAMINATION

"Q. Where had you started when you came into Arkansas.

"A.  I was going to Texas.

"Q.  Had you intended to stop in Arkansas?

"A.  No, sir."

It will be observed that appellant was asked if he could have gotten three percent profit on the cigarettes in Arkansas, would he have sold them; and he said yes. The State did not ask him if he would have sold them without paying the tax. He was merely asked if he could have gotten three percent, would he have sold the cigarettes. On that one question and answer the State contended in the oral argument before this Court that appellant admitted that he possessed the cigarettes in Arkansas for the purpose of illegal sale. I submit that he made no such admission. He merely said that he would have sold them, but do we presume that he was going to violate the law? I understand the State still has the burden of proving the guilt of the accused beyond a reasonable doubt; and I submit that that one question and answer on cross-examination does not constitute any admission of guilt.

Suppose while driving down the highway at 25 miles an hour in a lawful manner, a person should be arrested for speeding and when the case came up for trial it was shown that he had been going 25 miles an hour; but suppose the prosecuting attorney asked him on cross-examination, whether, under any circumstances he would have gone faster than 60 miles an hour and he answered in the affirmative. Did the answer that he might, under some circumstances, have gone faster than 60 miles an hour prove that he had been speeding at the time and place when he was arrested? No. A hypothetical question, as to what one might do at some other time and place, but had never done, is no evidence of what one *did* at the time and place for which he is being tried. This simple illustration shows that the appellant in this case had not violated any law; and so his conviction should be reversed. But it should be on the factual issue rather than on the issue of interstate commerce.

J. Seaborn Holt, Associate Justice (dissent). In my view, if the majority opinion stands its effect will be far-reaching and open the doors to bootleggers of cigarettes and also liquor, [the liquor traffic tax and transportation of liquor, § 48-921, 48-925, 48-934, Ark. Stats. 1947]. At the outset I want to point out that the majority opinion, in the last paragraph, states that "the State has no authority to levy a *tax on property* while it is being transported in interstate commerce." It is not my understanding that we are dealing here with a tax on property. The cigarette tax is not a tax on property but is an excise, or a tax on the privilege of holding or possessing cigarettes for personal use or for any other purpose in the State of Arkansas. *§ 84-2304, Ark. Stats. 1947* provides: "There is hereby levied the following excise or privilege tax, etc." "There is a material distinction between an excise and a property tax. An excise tax has been defined to be a tax imposed upon the performance of an act, engaging in an occupation, or the enjoyment of a privilege. It is usually imposed directly by the legislature, without an assessment, while a property tax is ordinarily computed upon valuation and levied either where the property is situated or at the owner's domicile, etc." [*Head* v. *Cigarette Sales Co.*, 188 Ga. 452, 4 SE 2nd 203].

As I read this record the facts are practically undisputed. Appellant, after procuring 173 cases of cigarettes for himself in St. Louis, Missouri, and loading them into his personally owned truck, entered Arkansas where he was arrested for violation of § 84-2317 Ark. Stats. 1947 which prohibits the possession for one's own use or any other purpose, cigarettes upon which the Arkansas cigarette tax has not been paid. At the time of his arrest he admitted that he had not paid the cigarette tax required. He was not a common carrier, was not a licensed Arkansas dealer, wholesaler, distributor or retailer, had no federal interstate commerce permit and carried no bill of lading. There was no consignee for the cigarettes. He said he was on his way with his cargo to Texas, and, in effect, that he proposed to dispose of them anywhere

along the route in Arkansas if he could find a buyer that would net him a 3% profit. He had no one in mind either in Arkansas or Texas to whom he would sell the cigarettes. In these circumstances the majority hold that "beyond a doubt" these cigarettes, when appellant was arrested, were being transported in interstate commerce; had not come to rest in this state; and that the tax imposed by Arkansas was a burden on interstate commerce and, therefore, unconstitutional. It seems to me that it would be splitting hairs for us to say in the circumstances here that this cargo of untaxed cigarettes, which defendant had in his possession in Arkansas, had not, in effect, come to rest, and thus take it out of interstate commerce, just because the defendant was apprehended before he had actually sold any of the cigarettes in Arkansas. I think the direct and circumstantial evidence in this case was substantial and supports the judgment of the circuit court. It is undisputed, that defendant every foot of the way on his proposed journey through Arkansas was ready, willing, and intended to dispose of his cigarettes or any part thereof in Arkansas to anybody who might care to buy. Are we going to say that it was necessary in these circumstances for the State of Arkansas to trail defendant every inch of the way through the State in order to catch him in the act of a sale, when the *mere possession* of the untaxed cigarettes is illegal. ". . . the immunity in case of an article transported from another state depends upon whether the tax challenged regulates or burdens interstate commerce. While a tax which discriminates against goods transported in interstate commerce is invalid, a state tax upon merchandise brought in from another state or upon its sales, whether in the original packages or not, after it has reached its destination and is in a state of rest, is lawful if the tax is not discriminating in its incidence against the merchandise because of its origin in another state." *11 Am. Jur., Commerce,* § *56.* ". . . Also, in the absence of congressional legislation, a state may constitutionally impose taxes, enact inspection laws, quarantine laws, and, generally, laws of internal police, even though the enactments may have an incidental effect upon interstate commerce . . ."

*11 Am. Jur., Commerce,* § *23.* As I see it, whether the appellant was legally transporting the cigarettes in question across the state line, is not a question of law, but one of fact, the evidence was conflicting as to the ultimate destination of the cigarettes and whether they were being transported interstate.

In the Georgia case above, the supreme court of that state, in construing a cigarette statute similar in effect to our own, had this to say: "Under a proper construction of the statute, the tax is not laid upon the privilege of receiving cigarettes in this State, but is levied upon the privilege of retaining, keeping, holding, or possessing them for personal use, after they have been . . . brought into this State, the essential requirement being that any person . . . within one hour . . . after having brought the same within the State of Georgia, as the case may be, and before the same, or any part thereof, are used or consumed, cause the same to have the requisite denomination and amount of stamp or stamps to represent the tax due thereon affixed as stated . . . we think it is a tax for the privilege of holding or possessing for personal use after receipt or acquisition by any means. This seems to be the necessary conclusion, in view of the provision that if the cigarettes are not stamped as required, the person acquiring them 'shall within one hour after receipt of such products, or after having acquired possession thereof, or after having brought the same within the State of Georgia, as the case may be, and before the same, or any part thereof, are used or consumed,' cause the requisite denomination and amount of stamps to be affixed. The tax is therefore an excise upon the privilege of use, or of holding or possessing for use, and not upon receipt. As was stated in *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 57 S. Ct. 524, 526, 81 L. Ed. 814, 'The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.' "

So I conclude that there was some substantial evidence to support the judgment in this case and I would affirm. Mr. Justice MILLWEE joins in this dissent.